**LaMONICA HERBST & MANISCALCO, LLP**
3305 Jerusalem Avenue
Wantagh, New York 11793
Telephone: 516.826.6500
Gary F. Herbst, Esq.
Jacqulyn S. Loftin, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 7 |
| WOLVERINE TAXI LLC, *et al*., | Case No.: 17-45660 (CEC) (Jointly Administered) |
| Debtors. | |

------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 7 |
| WRESTLER TAXI LLC, *et al*., | Case No.: 17-45700 (CEC) (Jointly Administered) |
| Debtors. | |

------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 7 |
| BROWNIE TAXI LLC, *et al*., | Case No.: 17-45732 (CEC) (Jointly Administered) |
| Debtors. | |

------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 7 |
| KABBALAH TAXI INC., *et al*., | Case No.: 17-45743 (CEC) (Jointly Administered) |
| Debtors. | |

------------------------------------------------------------x

**MOTION OF CHAPTER 7 TRUSTEE FOR AN ORDER: (I) APPROVING THE TRUSTEE SALES AND CARVE-OUT AGREEMENT; (II) APPROVING THE TERMS AND CONDITIONS OF SALE OF THE DEBTORS' MEDALLIONS; (III) APPROVING THE NOTICE TERMS FOR THE DEBTORS' MEDALLIONS; (IV) APPROVING THE SALE OF THE DEBTORS' MEDALLIONS, FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, SECURITY INTERESTS AND OTHER INTERESTS TO THE SUCCESSFUL BIDDER(S) AT THE SALE(S); (V) AUTHORIZING THE PAYMENT OF MEDALLION RENEWAL FEES FROM CASH COLLATERAL AND THE RELEASE OF REMAINING CASH COLLATERAL TO THE PARTICIPATING LENDERS; AND (VI) GRANTING RELATED RELIEF**

1

TO    **THE HONORABLE CARLA E. CRAIG**
       **CHIEF JUDGE, UNITED STATES BANKRUPTCY COURT**
       **EASTERN DISTRICT OF NEW YORK**

Gregory Messer, the Chapter 7 Trustee (the "Trustee") of the jointly administered estates of Wolverine Taxi LLC *et al*., Wrestler Taxi LLC *et al.*, Brownie Taxi LLC *et al*., and Kabbalah Taxi Inc. *et al*., by his counsel, LaMonica Herbst & Maniscalco, LLP, submits this motion (the "Motion")[1] seeking an Order scheduling a hearing on shortened notice and the entry of an Order: (i) approving the *Trustee Sales and Carve-Out Agreement* (the "Agreement") between the Trustee, on behalf of the Debtors' estates, and Banco Popular North America ("Banco Popular"), Bank Leumi USA ("Bank Leumi"), Melrose Credit Union ("Melrose") and Bethpage Federal Credit Union ("BFCU", along with Banco Popular, Bank Leumi and Melrose are collectively referred to as the "Participating Lenders"), a copy of the Agreement is annexed as **Exhibit "A"**; (ii) authorizing the Trustee to proceed with public auction sale(s) of the Debtors' Medallions in accordance with the Agreement (the "Sale" and/or "Sales"); (iii) approving the Terms and Conditions of Sale (the "Sale Terms") and the Notice of Sale, a copy of each are annexed as **Exhibit "B" and "C"**, respectively; (iv) approving the Sale of Debtors' Medallions, free and clear of all liens, claims and encumbrances, security interests and other interests (collectively, the "Liens"), to the successful bidder(s) at the Sale(s) in accordance with the Agreement; (v) authorizing the payment of medallion renewal fees from the Participating Lenders' cash collateral and the release of remaining cash collateral to the Participating Lenders; and (vi) approving and granting such other, further and different relief as this Court deems just and proper, and respectfully states as follows:

---

[1] Capitalized terms not otherwise defined herein shall have the definition ascribed to the in the Trustee Sales and Carve-Out Agreement.

## PRELIMINARY STATEMENT

1.      This Motion represents a critical step in the orderly liquidation of the assets of the Debtors' estates. By this Motion, the Trustee seeks authorization to proceed with Sale of the Debtors' Medallions in accordance with the Agreement and approval of the Sale Terms and Notice of Sale in accordance with Local Bankruptcy Rule 6004-1 and General Order M-383 dated November 18, 2009 adopting the Amended Guidelines for the Conduct of Asset Sales (the "M-383 Order").

2.      Each Participating Lender asserts first priority liens on certain Debtors' Medallions. Specifically, Banco Popular asserts a first priority lien on all Medallions owned by the jointly administered estates of Wrestler Taxi LLC, *et al.*  Bank Leumi asserts a first priority lien on all Medallions owned by the jointly administered estates of Brownie Taxi LLC, *et al.*  Melrose asserts a first priority lien on all Medallions owned by the jointly administered estates of Wolverine Taxi LLC, *et al.*  BFCU asserts a first priority lien on all Medallions owned by the jointly administered estates of Kabbalah Taxi Inc., *et al.*

3.      Subject to Court approval, the Trustee and the Participating Lenders have entered into the Agreement that provides for, among other things, the consensual Sale of the Debtors' Medallions with an Estate Carve-Out on account of each Medallion. At the Sale, the Trustee intends to sell the Debtors' Medallions in Medallion Pools of 20 until such time that less than 20 Medallions remain, at which time the Final Pool shall consist of 11 Medallions.

4.      If the Medallion Pool is sold to a third-party in accordance with the terms of the Agreement, then the Participating Lenders have agreed to an Estate Carve-Out of the lesser of (1) eight and one-half percent (8.5%) of the Net Proceeds and (2) $16,500 per Medallion per estate (unless it is after the Trustee Sales Termination Date). In the instance where any of the

Participating Lenders credit bid their claim to purchase their respective Medallions as provided for in the Agreement; however, the Estate Carve-Out will be the lesser of (1) six percent (6.0%) of the Net Proceeds and (2) $16,500 per Medallion per estate.

5.      As a result of these negotiations, the Participating Lenders are not moving forward with their motions seeking relief from the automatic stay while the Trustee attempts to liquidate the Debtors' Medallions in accordance with the terms of the Agreement. The Trustee submits that proceeding in this manner is the best opportunity to realize monetary value from the estates' assets for the benefit of the estates' creditors.

6.      For these and the reasons set forth below, the Trustee respectfully requests that the Court approve the relief sought herein.

**JURISDICTION AND VENUE**

7.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

8.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

9.      The statutory predicates for the relief sought herein include 11 U.S.C. §§ 105, 363, 364 and 506 (the "Bankruptcy Code"), Rules 2002 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Bankruptcy Rule 6004-1.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.      The Procedural History of the Debtors' Bankruptcy Cases**

10.      On June 19, 2017, the debtors, Ben-Khe Trans. Corp., Bimbo Taxi, LLC, Dragonfly Taxi Inc., Ducati Taxi Inc., Golden Beetle Taxi LLC, Grasshopper Taxi LLC, Jolly Hacking Corp., Moth Taxi LLC, Pelican Taxi LLC, Privet Taxi Inc., Purlie Trans Corp., Saint Tropez Taxi Inc., Split Transit Inc., Trestomos Trans Inc., Wasp Taxi LLC and Wolverine Taxi LLC (the

4

"Wolverine Taxi Debtors"), along with four other entities, each filed separate voluntary petitions for relief pursuant to Chapter 11 of Title 11 of Bankruptcy Code in the in the United States Bankruptcy Court, District of New Jersey (the "NJ Bankruptcy Court").

11.     By Order dated June 28, 2017 [Dkt No. 25], the cases were jointly administered under Wolverine Taxi LLC, *et al* [Case No. 17-22500 (VFP)].

12.     On August 29, 2017, the debtors, Antibes Taxi Inc., Beaujolais Taxi Inc., Belvedere Taxi LLC, Betmar Express Cab Corp., Black Label Taxi LLC, Body Slam Taxi LLC, Bordeaux Taxi Inc., Calvados Taxi LLC, Chamonix Taxi LLC, Chardonnay Taxi Inc., Cognac Taxi LLC, Cuervo Taxi LLC, Filya Taxi Inc., Finlandia Taxi LLC, Frangelico Taxi LLC, Gaze Service Co. Inc., Hankuri Taxi Inc., Loire Valley Taxi LLC, Mediterranean Taxi Inc., Razor Service Corp., Sambuca Taxi LLC, Sardinia Taxi Inc., Two Hump Taxi, LLC, Wrestler Taxi LLC, and XO Taxi Inc. (collectively, the "Wrestler Taxi Debtors") each filed separate voluntary petitions for relief pursuant to Chapter 11 of the Bankruptcy Code in the NJ Bankruptcy Court.

13.     By Order dated September 5, 2017 [Dkt No. 24], the cases were jointly administered under Wrestler Taxi LLC, *et al* [Case No. 17-27436 (VFP)].

14.     On August 29, 2017, the debtors, A&J Cab Corp., Almanac Hacking Corp., Avignon Taxi, LLC, Avit Trans Inc., Butterscotch Taxi LLC, Brownie Taxi LLC, Portofino Taxi Inc., Pupsik Hacking Corp., Smores Taxi LLC, Shurik Taxi Corp., and Soly Cab Corp. ("Brownie Taxi Debtors") each filed separate voluntary petitions for relief pursuant to Chapter 11 of the Bankruptcy Code in the NJ Bankruptcy Court.

15.     By Order dated September 5, 2017 [Dkt No. 21], the cases were jointly administered under Brownie Taxi LLC, *et al* [Case No. 17-27507 (VFP)].

16.     On August 30, 2017, the debtors, Barcelona Taxi Inc., Devil Dog Taxi LLC, Diamond Castle Taxi Inc., Ferco Hacking Corp., Geneva Taxi Inc., Gstaad Taxi LLC, Kabbalah Taxi Inc., Maserati Taxi Inc., Monte Carlo Taxi Inc., Provance Taxi Inc., Smirnoff Taxi Inc., Sshri Trans Corp., and Young Cab Corp. (the "Kabbalah Taxi Debtors", along with Wolverine, Wrestler and Brownie Debtors are collectively referred to herein as the "Debtors") each filed separate voluntary petitions for relief pursuant to Chapter 11 of the Bankruptcy Code in the NJ Bankruptcy Court.

17.     By Order dated September 5, 2017 [Dkt No. 21], the cases were jointly administered under Kabbalah Taxi Inc., *et al* [Case No. 17-27566 (VFP)].

18.     On October 30, 2017, the Debtors' cases were transferred to the United States Bankruptcy Court, Eastern District of New York (the "Bankruptcy Court").

19.     By Order dated January 8, 2018, the Debtors' cases were converted to ones under Chapter 7 of the Bankruptcy Code.

20.     By Notice of Appointment dated January 10, 2018, Gregory Messer was appointed as the interim Chapter 7 Trustee of the Debtors' estates, had since duly qualified and is the permanent Trustee administering these Debtor jointly administered estates.

21.     The application to retain Maltz Auctions, Inc., d/b/a Maltz Auctions ("Maltz Auctions") as Trustee's auctioneer to sell the Debtors' Medallions is currently pending with the Court.

**B.     The Estates' Assets**

22.     Each of the Debtors owns New York City taxi medallions (the "Medallions") issued by the New York City Taxi and Limousine Commission ("TLC").

23.     Some of the Medallions will expire on May 31, 2018 (the "Expiring Medallions"). The renewal application and renewal fees for the Expiring Medallions should be submitted to the TLC by April 30, 2018 to ensure that the Expiring Medallions remain active and in good standing. The Trustee is in the process of preparing such paperwork and has obtained consent of the Participating Lenders to use their cash collateral funds that are in each of the Debtors' estates to pay for the renewal fee of $1,650 per Expiring Medallion (the "Renewal Fees"). Some Debtors have sufficient cash to pay the Renewal Fees, some will have excess cash available after the Renewal Fees are paid, and some have insufficient cash to pay the full Renewal Fees.  It is imperative that the Trustee begin this process immediately.

24.     Accordingly, the Trustee seeks the Court's authority to immediately pay to the TLC any Renewal Fees from the estate of any Debtor that owns an Expiring Medallion.  For any Debtor that owns an Expiring Medallion, the Trustee also seeks the Court's authority to immediately pay to each Participating Lender from each of its borrowers' DIP accounts all cash collateral that remains in the DIP accounts after payment of a Renewal Fee. For any Debtor that owns a Medallion that is not an Expiring Medallion, the Trustee seeks the Court's authority to immediately pay to each Participating Lender from its borrowers' DIP accounts all cash collateral that is currently in such DIP accounts.  The Trustee also requests that such relief be set forth in the Order Scheduling a Hearing on Shortened Notice.

25.     If a Debtor owns an Expiring Medallion and has insufficient cash to fully pay Renewal Fees, each Participating Lender will advance to the Trustee the amounts required over and above the amounts contained in its borrowers' DIP accounts so the Trustee can fully pay all Renewal Fees on its borrowers' Expiring Medallions (the "Advanced Funds"). Each Participating Lender shall be entitled to a credit against the Estate Carve-Out of the greater of: a) the Advanced

Funds less all amounts paid to it from its borrowers' DIP accounts; and b) $2,500.00. The Trustee also seeks Court authority to accept funds from each Participating Lender to supplement the amount needed to pay the Renewal Fee. The Trustee also requests that such relief be set forth in the Order Scheduling a Hearing on Shortened Notice.

26.     The parties anticipate that all Sales will conclude prior to the time the non-Expiring Medallions expire on May 31, 2019.

27.     All monies expended or received by the Participating Lenders will be applied to the indebtedness owed to each Participating Lender.

**C.     Secured Indebtedness of the Participating Lenders**

28.     Melrose is secured in all of the Medallions owned by the jointly administered estates of Wolverine Taxi and all of the proceeds from the operation of such Medallions (the "Melrose Collateral").

29.     Banco Popular is secured in all of the Medallions owned by the jointly administered estates of Wrestler Taxi and all of the proceeds from the operation of such Medallions (the "Banco Popular Collateral").

30.     Bank Leumi is secured in all of the Medallions owned by the jointly administered estates of Brownie Taxi and all of the proceeds from the operation of such Medallions (the "Bank Leumi Collateral").

31.     BFCU is secured in all of the Medallions owned by the jointly administered estates of Kabbalah Taxi and all of the proceeds from the operation of such Medallions (the "BFCU Collateral").

32.     The Debtors' taxi vehicles, which are property of the estates, are not part of the Participating Lenders' Collateral and are not subject to the Participating Lenders' liens. Similarly,

any proceeds from the sale of Debtors' taxi vehicles are property of the jointly administered estates of the Debtors and are not subject to the Participating Lenders' Collateral.

**D.    The Trustee Sales and Carve-Out Agreement**

33.    The Trustee is prepared to move forward with the Sale of the Debtors' Medallions free and clear of the Liens pursuant to Bankruptcy Code § 363(b), (f) and (m). The Participating Lenders and the Trustee negotiated the Estate Carve-Out from the Net Proceeds from the Sale of the Participating Lenders' Collateral as set forth in the Agreement. The salient terms of the Agreement are set forth herein, however, all parties are encouraged to review the full terms of the Trustee Sales and Carve-Out Agreement annexed hereto as Exhibit "A".

34.    Specifically, the Medallions will be sold by the Trustee free and clear of all Liens, including but not limited to, all prepetition and post-petition liens, claims, and interests of the Internal Revenue Service, the New York State Department of Taxation and Finance ("NYS DTF") relating to the MTA Tax and the TIF Surcharge and any amounts due to the New York State Department of Motor Vehicles Traffic Violations Bureau with such Liens to attach to the net proceeds of sale payable to the Debtors' estates, after payment to the Participating Lenders pursuant to the Agreement and the Sale Procedures Order, from encumbered Medallions.

35.    Further, the gross proceeds will be reduced to Net Proceeds strictly for Senior Governmental Liens, which are defined as perfected and unavoidable prepetition secured claims of New York Department of Finance with respect to unpaid prepetition principal and interest accrued only to the extent that such claims are the subject of tax warrants that were duly filed and recorded against the Debtor prior to the date the Participating Lender properly perfected its security interest in such Medallions. The gross proceeds will also be reduced to Net Proceeds for any amount necessary to pay for any other third-party prepetition claims secured by allowed, properly

perfected, and unavoidable liens that were senior in priority under Article 9 of the New York Uniform Commercial Code to the prepetition liens of the Participating Lender as of the bankruptcy filing. <u>See</u> Agreement, ¶7.

36.     The Sale of each Medallion to a third party must be for a minimum gross purchase price agreed upon by the Participating Lenders and the Trustee (the "<u>Upset Price</u>").

37.     Nonetheless, if there is at least one qualified Third Party Qualified Bid[2] for a Medallion Pool encumbered by the prepetition liens of <u>more than one</u> Participating Lender in excess of the Upset Price, then (a) the Participating Lenders will not be allowed to credit-bid, and (b) the Estate Carve-Out for such lot will be a cash amount per Medallion sold equal to <u>the lesser of</u> (1) eight and one-half percent (8.5%) of the Net Proceeds and (2) $16,500.

38.     If there is one Third Party Qualified Bid for a Medallion Pool, encumbered by the prepetition liens <u>but for only one</u> Participating Lender, which is in excess of the Upset Price, then (a) such Participating Lender shall be allowed to credit-bid on the Medallion Pool, and (b) the Estate Carve-Out for such lot shall be a cash amount per Medallion sold equal to <u>the lesser</u> of (1) eight and one-half percent (8.5%) of the Net Proceeds and (2) $16,500.

39.     If there is no Third Party Qualified Bid for an amount in excess of the Upset Price, then <u>each</u> Participating Lender has the right to either (a) credit-bid for and purchase the respective Medallion for an amount not less than the Upset Price, in which case the Estate Carve-Out for such Medallion shall be a cash amount per Medallion sold equal to <u>the lesser of</u> (1) six percent (6.0%)

---

[2] Every Order relating to the Sale(s) of the Debtors' Medallions shall state that in no event shall Evgeny Freidman, his successors and assignees, his direct and indirect affiliates and subsidiaries and their respective successors and assignees, any other individuals or entities that are or may be liable for any indebtedness or obligation of any Debtor to the Participating Lender, and any other individuals or entities that are in any other manner associated with, controlled by, or related to Evgeny Freidman are entitled to bid at any Sale.

of the Net Proceeds and (2) $16,500, or (b) cause the Trustee to withdraw the respective Medallion

from the Sale for inclusion in a later Sale.

40.    Lastly, if any Medallion has not been sold on or before the Trustee Sale Termination

Date—the first anniversary of the date on which the Approval Order is entered by the Bankruptcy

Court—the remaining Medallions will be purchased by such Participating Lender by credit-bid

not less than the Upset Price and not to exceed the aggregate indebtedness secured by such

Medallion.  In that event, the Estate Carve-Out for such Medallion shall be a cash amount per

Medallion sold equal to <u>the lesser</u> of (1) six percent (6.0%) of the Net Proceeds and (2) $16,500.

### <u>REQUESTED AND BASIS FOR RELIEF REQUESTED</u>

**I.    The Sale of the Medallions as Set Forth in the Agreement Represents a Reasonable<br>Exercise of the Trustee's Business Judgment and Should Be Approved**

41.    Bankruptcy Code § 363 provides, in relevant part, that "[t]he trustee, after notice

and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

estate . . . ." 11 U.S.C. § 363(b)(1). The terms of such sale are generally within the sound discretion

of the debtor, or if applicable the trustee. <u>See</u> <u>Committee of Equity Security Holders v. Lionel</u>

<u>Corp. (In re Lionel Corp.)</u>, 722 F.2d 1063, 1071 (2d Cir. 1983); <u>see</u> <u>also</u> <u>Official Comm. of</u>

<u>Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.)</u>,

973 F.2d 141, 145 (2d Cir. 1993); <u>In re Dial-A-Mattress Operating Corp.</u>, 2009 Bankr. LEXIS

1801, at *12 (Bankr. E.D.N.Y. June 24, 2009) ("The business judgment test is the standard for

Section 363 sales in this Circuit." (citations omitted)); <u>In re Hirsch</u>, 360 B.R. 43, 45–46, 48, 50

(Bankr. E.D.N.Y. 2007) (requiring "existence of 'a good business reason to grant such an

application'" (<u>quoting</u> <u>In re Lionel Corp.</u>, 722 F.2d at 1071)); <u>In re Thomson McKinnon Sec., Inc.</u>,

120 B.R. 301, 307–08 (Bankr. S.D.N.Y. 1990). As recognized by the United States Court of

Appeals for the Second Circuit in <u>Lionel Corp.</u>, a court may approve a § 363 application after

expressly determining from the evidence presented that a good business reason exists to grant such application. 722 F.2d 1063.

42.    In addition, Bankruptcy Code § 105(a) grants the Court the authority to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). This provision is "the basis for a broad exercise of power [by the Court] in the administration of a bankruptcy case." 2 COLLIER ON BANKRUPTCY ¶ 105.01 (Alan N. Resnick and Henry J. Sommer. eds., 16th ed.).

43.    In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside of the ordinary course of business may be by private sale or by public sale. In practice, the preferred method is to conduct a public sale because a public sale will most often result in a greater number of potential bidders in the shortest amount of time. That is, in order to determine that a private sale has yielded the highest or best offer, property generally must remain on the market for a significantly longer period of time than when offered at a public sale.

44.    Local Rule 6004-1(a) further provides that:

> The trustee may sell property of the estate that the trustee reasonably believes has an aggregate gross value of no more than $10,000 by public or private sale on seven days' written notice to any party with an interest in such property, the landlord of the premises on which the property is located, and such other parties as the Court may direct. The notice of any proposed sale of property of the estate having an aggregate gross value of at least $2,500 shall include the time and place of the proposed sale, whether the sale will be public or private, and the terms and conditions of the proposed sale.

45.    The M-383 Order supplements the requirements of Bankruptcy Code § 363, Bankruptcy Rule 6004 and Local Rule 6004-1 and provided, in pertinent part, that:

> When multiple asset sales over time are expected, a [trustee] should consider seeking Court approval of global bidding procedures to avoid the need to obtain Court approval of procedures for each such sale. Similarly, the [trustee] should consider seeking Court approval of global notice and other appropriate procedures to facilitate sales of assets of limited value or *de minimis* sales that do not warrant

an auction or a separate motion for each sale. What constitutes a *de minimis* sale will depend on the facts of each case.

See Local Rule 6004-1.

46.     Here, the Trustee determined, in his sound business judgment, that selling the Medallions outside the ordinary course of business at Sale(s) is justified, necessary and appropriate. Indeed, compelling business justifications exist for the approval of the proposed Sale(s) of the Medallions as set forth herein. All of the Medallions are encumbered by debt greater than the projected value of these Medallions.  But with this proposed Estate Carve-Out, the Trustee has ensured that each estate will retain a percentage of the Net Proceeds for the benefit of allowed claimants. Moreover, the Trustee has surrendered the Medallions to the TLC to prevent incurring any further penalties or charges.

47.     In preparation of the Sale(s), Maltz Auctions will publish the Sale Notice in *The New York Times* and relevant trade publications (either in print or electronically), including *Taxicab Times* and *TLC Monthly.*  In addition, Maltz Auctions will send direct mailings to targeted recipients, engage in telemarketing campaigns and engage a public relations company to assist with the promotion of the Sale(s). The Trustee believes that the marketing and advertising campaign proposed by Maltz Auctions, for which the estates will bear no costs, is designed to ensure that the highest and best offers for the Medallions are received.

48.     For these reasons, the Trustee, in the exercise of his reasonable business judgment, submits that the Agreement is in the best interests of the Debtors' estates and recommends its approval.

## II.     The Sale Terms and Notice of Sale Should Be Approved

49.     The salient terms of the Sale Terms are set forth herein, however, all parties are encouraged to review Exhibit "B" for a full understanding of the Sale Terms.  The Trustee intends

to sell the Debtors' Medallions in pools of 20 Medallions (each, a "Medallion Pool") until such time that less than 20 Medallions remain, at which time the pool shall consist of 11 Medallions (the "Final Medallion Pool"). Each Medallion Pool shall each consist of 12 unrestricted Medallions, 3 hybrid/alternative fuel Medallions and 5 handicap Medallions. The Final Medallion Pool shall consist of 7 unrestricted Medallions, 2 hybrid/alternative fuel Medallions and 2 handicap Medallions.

50.     The Medallions will be sold "as is", "where is", without any representations of any kind or nature whatsoever, including as to merchantability or fitness for a particular purpose, and without warranty or agreement as to the condition of such personal property.

51.     On the day of the Sale, each bidder must submit executed copies of the Sale Terms and a deposit of $20,000 per Medallion for an aggregate amount of no less than (the "Deposit"): a) $400,000 for a Medallion Pool; and b) $220,000 for the Final Medallion Pool. At the conclusion of the Sale, Maltz Auctions will return Deposits to all Bidders, except for the Successful Purchaser(s) and the Second Highest Bidder. Further, the Successful Purchaser, the party determined to have the highest and best bid for the Medallion, will be required to immediately increase its Deposit to 20% of the successful purchaser price.

52.     The transfer of the Medallion(s) to the Successful Purchaser is contingent upon approval by the TLC, which approval the Successful Purchaser shall promptly seek in good faith and at the sole cost and expense of the Successful Purchaser. The Successful Purchaser is also responsible for the .5% transfer tax paid to the TLC at the Closing.

53.     In accordance with Local Rule 6004-1(f), within 21 days of the Sale(s), Maltz Auctions shall file a report of sale with the Court and transmit a copy of the report to the United States Trustee.

54.     The Trustee submits that the Sale Terms are reasonably designed to ensure that the Debtors' estates receive the maximum benefit available from the sale of the Medallions and therefore warrant Court approval.

### III.    The Notice of Sale

55.     Pursuant to Bankruptcy Rules 2002(c) and 6004(a), the Trustee is required to give 21 days' notice of any proposed sale of property not in the ordinary course of business to the Debtors and all creditors. See FED. R. BANKR. P. 2002(c) and 6004(a). Bankruptcy Rule 2002(c) provides that such notice must include the time and place of any auction, a sale hearing, and the time fixed for objections to the sale. See FED. R. BANKR. P. 2002(c). The M-383 Order provides that the statutory notice period should not be shorted for notice of the actual sale without a showing of good cause. See M-383 Order at 14, ¶ 2.

56.     The Notice of Sale sets forth the important and relevant Sale Terms, including, the date, time and location of the Sale, the Sale Terms, including that the Sale will be free and clear of all Liens, a reasonably specific description of the Medallions to be sold.

57.      The Trustee proposes to serve a Notice of Sale, substantially in the form annexed as Exhibit "C", not less than twenty-one (21) days prior to the first scheduled Sale upon the following parties:

     a.  The Debtors, through their counsel

     b.  The United States Trustee;

     c.  Entities who have requested notice under Bankruptcy Rule 2002 in the jointly administered estates of Wolverine Taxi LLC, *et al.*, Wrestler Taxi LLC, *et al.*, Brownie Taxi LLC, *et al.* and Kabbalah Taxi Inc. *et al.*;

     d.  Entities who filed proofs of claim with the Court in the jointly administered estates of Wolverine Taxi LLC, *et al.*, Wrestler Taxi LLC, *et al.*, Brownie Taxi LLC, *et al.* and Kabbalah Taxi Inc. *et al.*;

     e.    All entities known or reasonably believed to have asserted a lien, encumbrance or claim or other interest in the Medallions;

     f.    All creditors listed on the petitions and schedules of the jointly administered estates of Wolverine Taxi LLC, *et al.*, Wrestler Taxi LLC, *et al.*, Brownie Taxi LLC, *et al.* and Kabbalah Taxi Inc. *et al.*;

     g.    All affected federal, state and local regulatory and taxing authorities, including the Internal Revenue Service;

     h.    All entities known or reasonably believed to have expressed an interest in the Medallions; and

     i.    Evgeny Freidman.

(collectively, the "Notice Parties").

58.    As set forth above, Maltz Auctions also intends to publish the Notice of Sale on its website and will market the Sales of the Medallions through electronic mail distribution lists, print and regular mail campaigns.

59.    The Trustee submits that the Notice of Sale as proposed substantially complies with Bankruptcy Rule 2002 and the M-383 Order and constitutes good and adequate notice of the Sale(s). Therefore, the Trustee respectfully requests that the Court approve the proposed Notice of Sale.

## IV.   The Medallions Should Be Sold Free and Clear of Liens

60.    Bankruptcy Code § 363 permits the sale of assets to be free and clear of liens, claims and interests of an entity in such property if: (a) applicable state law will permit the sale; (b) such entity consents; (c) the price at which the assets is being sold exceeds the liens, claims and interests; (d) the security interest in the Medallions is disputed; or (e) the entity with an interest in the asset being sold could be compelled in a legal or equitable proceeding to accept a money satisfaction of its interest in and to the Medallions. See 11 U.S.C. § 363(f).

61.   As set forth above, there are several Liens asserted against each of the Medallions by the respective Participating Lenders. Pursuant to the Agreement, the Participating Lenders consented to the Sale of the Medallions in accordance with Bankruptcy Code § 363, free and clear of any and all Liens or adverse claims to title, of whatever kind or nature, with such Liens, if any, to attach to the proceeds of sale in such order and priority as they existed as of the bankruptcy filings. Specifically, any Liens of the Participating Lenders shall attach to the proceeds of sale in such order and priority as they existed immediately prior to the Filing Date. Moreover, any Priming Amounts to those of the Participating Lenders will be paid from the gross proceeds from the Sale of the Medallions pursuant to the Agreement.

62.   Based on the foregoing, the Trustee believes that he will be able to satisfy to requirements of Bankruptcy Code § 363(f).

## V.   The Trustee Should Be Granted Related Relief

63.   Pursuant to Bankruptcy Rule 6004(h), all orders authorizing the sale of property pursuant to Bankruptcy Code § 363 are automatically stayed for fourteen (14) days after entry of the order, unless otherwise ordered by the Court. FED. R. BANKR. P. 6004(h). The stay period is intended to provide sufficient time for an objecting party to appeal before the order is implemented. See Advisory Committee Notes to FED. R. BANKR. P. 6004(h).

64.   Although little guidance is provided by either Bankruptcy Rule 6004(h) or the Advisory Committee Notes as to when a court should "order otherwise", it has been suggested that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." See 10 COLLIER ON BANKRUPTCY § 6004.09 (Lawrence P. King, et al. eds, 15th ed. rev. rel. 2003). Colliers also proposes that if an objection is filed and overruled, and the objecting party informs the court of its

intent to appeal, the stay may be reduced to the amount of time actually necessary to seek a stay pending such appeal. Id.

65.    The Trustee respectfully requests that the Court waive the 14-day stay period required under Bankruptcy Rule 6004(h). This relief is both necessary and appropriate under the circumstances of this case given the nature of the assets to be sold and the proposed Notice of Sale procedures set forth herein. Indeed, in the event the Motion is approved, the Trustee intends to proceed with its marketing campaign in connection with the Sale(s) immediately upon entry of the Sale Procedures Order.

66.    Pursuant to the M-383 Order, the Trustee is required to highlight any "extraordinary provisions" in a separate section of a motion seeking to sell estate assets. The Trustee submits that there are no "extraordinary provisions" with respect to the proposed Sale(s) of the Medallions that have not otherwise been highlighted herein.

**NOTICE AND NO PRIOR REQUEST**

67.    The Trustee, through counsel, will submit an affirmation pursuant to Bankruptcy Rule 9077 in support of the request to schedule a hearing on shortened notice filed contemporaneously herewith.

68.    No previous request for the relief sought herein has been made by the Trustee to this or any other Court.

**WHEREFORE** the Trustee respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: April 11, 2018
      Wantagh, New York

                    **LaMONICA HERBST & MANISCALCO, LLP**
                    Counsel to Gregory M. Messer, Chapter 7 Trustee

           By:     *s/ Gary F. Herbst*
                    Gary F. Herbst, Esq.
                    Jacqulyn S. Loftin, Esq.
                    3305 Jerusalem Avenue, Suite 201
                    Wantagh, New York 11793
                    Telephone: 516.826.6500

*M:\Documents\Company\Cases\Hypnotic Taxi LLC\Sale of the Addt'l Debtor Medallions\Mtn to Sell Addt'l Debtor Medallions.docx*